566 F.2d 237
 10 ERC 1796, 184 U.S.App.D.C. 345, 7
Envtl. L. Rep. 20,758
 George SILENTMAN and Mary Silentman, Petitioners,
v.
FEDERAL POWER COMMISSION, Respondent,
San Diego Gas & Electric Co., Southwest Gas Corporation,
Transwestern Pipeline Company, et al., and Navajo
Tribal Utility Authority, Intervenors.
 No. 76-1192.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued June 10, 1977.
Decided Aug. 26, 1977.
Rehearing Denied Oct. 25, 1977.
 
 Richard W. Hughes, Window Rock, Ariz., for petitioners.
 Thomas M. Walsh, Atty., Federal Power Commission, Washington, D. C., with whom Drexel D. Journey, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel, and Allan Abbot Tuttle, Sol., Federal Power Commission, Washington, D. C., were on the brief, for respondent. D. Jane Drennan, Atty., Federal Power Commission, Washington, D. C., also entered an appearance for respondent.
 
 
 1
 P. M. Schenkkan, Austin, Tex., with whom James W. McCartney, Norman D. Radford, Houston, Tex., and Thomas D. Clarke, Los Angeles, Cal., were on the brief, for intervenors, Transwestern Pipeline Co., et al.
 
 
 2
 Constance L. Howard, San Diego, Cal., entered an appearance for intervenor, Southwest Gas Corp.
 
 
 3
 Walter F. Wolf, Jr., Gallup, N. M., entered an appearance for intervenor, Navajo Tribal Utility Authority.
 
 
 4
 Donald J. Richardson, San Francisco, Cal., entered an appearance for intervenor, San Diego Gas & Elec. Co.
 
 
 5
 Before WRIGHT and MacKINNON, Circuit Judges, and HOWARD T. MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.
 
 
 6
 Opinion for the Court filed by MacKINNON, Circuit Judge.
 
 
 7
 Opinion filed by J. SKELLY WRIGHT, Circuit Judge, concurring in the result.
 
 MacKINNON, Circuit Judge:
 
 8
 The National Environmental Policy Act, 42 U.S.C. § 4321 et seq. (1970) ("NEPA"), has undoubtedly had a tremendous influence on the conduct of governmental functions, but seldom has the degree of that influence approached closer to actual interference than in this case. Petitioners have skillfully employed the most subtle provisions of the Act to retard the approval of construction of a coal gasification plant, at a cost estimated at $5.5 million per month of delay.[1] The premise for the delay is not that environmental consequences are being or will be ignored, but that error in the manner, and particularly in the timing, with which the Commission has undertaken to explore those consequences constitutes an insurmountable barrier to the granting of a certificate of public convenience and necessity.[2]
 
 
 9
 Transwestern Coal Gasification Co., Pacific Coal Gasification Co., and Western Gasification Co. filed an application in February of 1973 for a certificate of public convenience and necessity with the FPC. Permission was sought to construct a coal gasification plant in San Juan County, New Mexico, and to transport the natural gas derived from that plant by pipeline to connect with an interstate natural gas pipeline. Such a project requires the approval of many federal agencies, including the Department of the Interior's Bureau of Reclamation (which was designated the "lead agency" on the project) as well as the Federal Power Commission.
 
 
 10
 In September of 1973,[3] the Commission ruled that its jurisdiction was limited to the relatively minor aspect of the project encompassed by the "tap and valve" which connected with the interstate pipeline. Hearings proceeded on that issue alone, and part of the evidence received was a comprehensive document prepared by Battelle Columbus Laboratories, entitled Detailed Environmental Analysis Concerning A Proposed Coal Gasification Plant, which analyzed the environmental impact of the entire project. Had the Commission considered that document as a preliminary environmental impact statement, there would have been no basis for this appeal.
 
 
 11
 The administrative law judge ruled to approve the certificate of public convenience and necessity on June 13, 1974, and on April 21, 1975, the Commission affirmed in Opinion No. 728. That opinion held that the FPC's jurisdiction over the "tap and valve facility" in the New Mexico project was not sufficient to constitute "major federal action warranting the preparation of an environmental impact statement under the National Environmental Policy Act." Opinion No. 728 at 5, Rec. at 3576. Hence, even though there was ample evidence in the record of the environmental consequences of the project, the Commission essentially precluded itself from asserting that it had, in actuality, given that evidence proper attention.[4]
 
 
 12
 On July 28, 1975, the opinion of this court in Henry v. FPC, 168 U.S.App.D.C. 137, 513 F.2d 395 (1975), was handed down. Henry involved the appeal of the Commission's September, 1973, order which had established a narrow basis for the Federal Power Commission's jurisdiction on this project. While sustaining the Commission's decision that it had no jurisdiction beyond the pipeline connection facility, we held that NEPA required consideration by the FPC to "encompass an evaluation of all the elements of the gasification project" and that this required an environmental impact statement to be issued by the FPC (and all the other governmental agencies involved as well) that would address the environmental consequences of the entire project. See 168 U.S.App.D.C. at 148-49, 513 F.2d at 406-07.
 
 
 13
 On October 3, 1975, the Silentmans petitioned to intervene in the proceedings before the FPC, which were in the process of rehearing. The Commission permitted their entry into the hearings. On November 21, 1975, the Commission released Opinion No. 728A, which granted a conditional certificate of public convenience and necessity as a means of adding some certainty to the project that would assist it in securing the necessary financing. The two conditions imposed before an unqualified certificate would issue were that (1) the Commission approve of the environmental consequences, after studying the final EIS to be issued by the Department of Interior, and that (2) the proposed financing terms for the pipeline linkage be approved.
 
 
 14
 The Commission's attempt to implement our Henry opinion is now challenged by the Silentmans. Specifically, petitioners raise three major arguments. First, it is contended that the FPC's conditional certificate of public convenience and necessity is the type of final agency action that requires an environmental impact statement under the Supreme Court's opinion in Aberdeen & Rockfish v. SCRAP, 422 U.S. 289, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975) ("SCRAP II" ). Second, the Council on Environmental Quality has promulgated guidelines for environmental statements, and under 40 C.F.R. § 1500.7(a), "draft statements on administrative actions should be prepared and circulated for comment prior to the first significant point of decision in the agency review process." Petitioners claim that the conditional certification, and, indeed, even the administrative law judge's opinion, constituted such a "significant point of decision" that the FPC should have issued a draft statement. Third, the Silentmans argue that the FPC's own regulations require that "the initial decision of the presiding administrative law judge . . . include an evaluation of . . . environmental factors."[5]
 
 
 15
 The application of NEPA to major governmental action is complicated where several federal agencies are involved in the same project. We have already held in Henry that it is impermissible for any one agency to avoid addressing the environmental consequences of an entire federal project because its own involvement was small. But we also held in Henry that
 
 
 16
 (T)he FPC is not necessarily required to prepare a full environmental impact statement for the gasification project. It can rely on the Statement prepared by the lead agency. What is required is that the FPC . . . take into account the environmental costs of the gasification projects as a whole. It may do this by accepting, rejecting, or modifying the analysis of the lead agency.
 
 
 17
 168 U.S.App.D.C. at 149, 513 F.2d at 407.
 
 
 18
 The "lead agency" concept is explained in the Council on Environmental Quality's regulations, 40 C.F.R. § 1500.7(b) (1977):
 
 
 19
 Where more than one agency (1) directly sponsors an action, or is directly involved in an action through funding, licenses, or permits, or (2) is involved in a group of actions directly related to each other because of their functional interdependence and geographical proximity, consideration should be given to preparing one statement for all the Federal actions involved . . . . Agencies in such cases should consider the possibility of joint preparation of a statement by all agencies concerned, or designation of a single "lead agency" to assume supervisory responsibility for preparation of the statement. Where a lead agency prepares the statement, the other agencies involved should provide assistance with respect to their areas of jurisdiction and expertise. In either case, the statement should contain an environmental assessment of the full range of Federal actions involved, should reflect the views of all participating agencies, and should be prepared before major or irreversible actions have been taken by any of the participating agencies. Factors relevant in determining an appropriate lead agency include the time sequence in which the agencies become involved, the magnitude of their respective involvement, and their relative expertise with respect to the project's environmental effects.
 
 
 20
 (Emphasis added.)
 
 
 21
 It is quite clear from the foregoing and from Henry that individual agencies may rely on a lead agency's environmental statement. It is also inferable from the factors deemed relevant in selecting the lead agency that the expectation is for the lead agency to be ready with its statement before the other agencies have progressed very far in their own proceedings. But this cannot always be the case, and is not the case here. It is little comfort for an agency to have the right to rely on the lead agency's environmental statement if it must refrain from any action, even of a preliminary or conditional nature, until that statement is prepared. In such a case, where an agency is ready to issue a preliminary decision, the Council on Environmental Quality Guidelines should not be read to force the agency to prepare its own environmental impact statement, for that would essentially vitiate the Guideline's lead agency concept. It is significant that, whereas the Guidelines generally require a draft statement to circulate "prior to the first significant point of decision," 40 C.F.R. § 1500.7(a) (1977), the Guidelines only require that a lead agency statement be issued "before major or irreversible actions have been taken by any of the participating agencies." 40 C.F.R. § 1500.7(b). The inference is preliminary and certainly conditional decisions might be issued, but a major or irreversible action could not. If action taken was reversible that fact, as here, might take it out of the "major" category.
 
 
 22
 There is no doubt that the FPC's conditional certification was not an "irreversible" action. It might have been a "major" action, however, to the extent that it was in all respects a final approval of the certificate had the word "conditional" been appended just to avoid the guidelines, as petitioners allege. The same question would be relevant in assessing whether the FPC's own regulations requiring a statement of environmental factors should be implicitly modified where a lead agency statement is involved. As for the third basis for the Silentman's claim, however, it is unlikely that the conditional certification decision would constitute a "recommendation or report on a proposal for federal action" within the meaning of SCRAP II, 422 U.S. at 320, 95 S.Ct. at 2356, so that a final statement would be required from the Commission.
 
 
 23
 It cannot be disputed, however, that whether or not an environmental statement is required, the FPC must consider environmental consequences at every stage of its decision. Henry has held that the FPC must treat the coal gasification project in its entirety, and that project is undeniably a "major Federal actions significantly affecting the quality of the human environment". 42 U.S.C. § 4332(2)(C) (1970). In City of Willcox v. FPC, --- U.S.App.D.C. ----, --- F.2d ---- (1977), we recently held that "the mandate of the statute requires environmental consequences to be considered throughout the formulation of the plans to the fullest extent possible." In Opinion No. 728, the Commission gave no indication that it did so. In Opinion No. 728A, the Commission stated it would review the entire certification of public convenience and necessity in light of the Final Environmental Impact Statement prepared by the Department of Interior, and "(t)he authorizations granted herein shall not take effect until the Commission has reviewed (that document) . . . and determined that such are in the public interest . . . ." (Rec. 3716.) At the same time, the FPC will prepare its own environmental impact statement, as required by Henry.
 
 
 24
 Hence, both as to the undoubted obligation of the Commission to consider environmental consequences, and as to its more debatable obligation to issue a written preliminary statement in advance of the lead agency, the present status of the FPC's proceeding affords an opportunity for reconsideration and possible correction. The Silentmans urge that the Commission's errors (if, indeed, there are any) forever bar it from proceeding in the present docket. That result would require the FPC to start entirely anew, and would stymie the coal gasification project in the interim.
 
 
 25
 Alternatively, the FPC could, in its ultimate consideration of the lead agency's environmental statement, carefully reconsider each premise underlying its conditional certification, focusing on whether the environmental factors elucidated both by the lead agency and by its own studies, would cause it to change those premises in any way.
 
 
 26
 The choice between these two solutions has already been resolved by this court. In City of Willcox, supra, the choice was between (1) remanding an interim natural gas curtailment order for "reconsideration of environmental factors and the ultimate issuance of a permanent curtailment plan and environmental impact statement" (--- U.S.App.D.C. at ---, --- F.2d at ----) or (2) "approving the continued applicability of (the interim order) . . . with the understanding that the Administrative Law Judge will have broad revision power to incorporate changes called for by environmental considerations." (Id.)
 
 
 27
 We chose the latter as the "less disruptive course." It is not impossible in this case for the FPC similarly to re-create the administrative setting that existed during its consideration of the public convenience and necessity certification, and to infuse into its deliberations and eventual statement, the environmental factors that subsequently were developed. In fact, the less consideration it gave to environmental factors in its conditional decision, the more likely it might be that it would give full consideration to the final impact statement when it is issued. If the Commission fails to perform this task adequately, its action of final approval may then be challenged by petitioners. As we held in Henry,
 
 
 28
 There may be complaint, after the environmental impact statement is prepared, that the FPC has unlawfully ignored or disregarded environmental matters in its § 7 ruling. That will be subject to review when the particular certification orders are entered.
 
 
 29
 168 U.S.App.D.C. at 149, 513 F.2d at 407.
 
 
 30
 The decision in City of Willcox was "premised on the expectation that the Commission will develop a complete environmental record, considering all relevant alternatives as fully as though no interim curtailment plan had intervened." (--- U.S.App.D.C. ----, --- F.2d at ---- - ----.) It is our understanding that the FPC's Opinion No. 728A in this case, in conditioning final authorization on the Commission's approval of the environmental consequences, retains for the Commission the same degree of freedom expressed in City of Willcox. With that assurance, the Commission may proceed in its present docket. The exorbitant monetary cost and postponement of public benefit which would follow from a remand would thus be obviated, at no loss to the statutory concerns of NEPA. The Commission's conditional certification of public convenience and necessity is affirmed.
 
 
 31
 So ordered.
 
 
 32
 J. SKELLY WRIGHT, Circuit Judge, concurring in the result:
 
 
 33
 The only order before this court for review is the Commission's conditional certificate of convenience and necessity withholding final approval of the coal gasification project. Under the circumstances, it would appear that this court is without jurisdiction to review this case because the Commission's order approving the project is not final. See 15 U.S.C. § 717r. However, since another panel of this court has denied the Commission's motion to dismiss for lack of jurisdiction, I accept that ruling as the law of the case.
 
 
 34
 On the merits, I concur in the result reached by the court. In my view, given the special circumstance of this case, i.e., the intervening opinion of this court in Henry v. FPC, 168 U.S.App.D.C. 137, 513 F.2d 395 (1975), the Commission may now proceed to comply with its responsibilities under NEPA with respect to the project in suit; any such action taken, of course, may be the subject of further review.
 
 
 
 *
 Sitting by designation pursuant to Title 28, U.S.C. § 293(a)
 
 
 [1]
 Response of WESTCO to Statement . . . and Additional Statement with respect to . . . Alice Henry, et al. v. Federal Power Commission, filed with the FPC on August 25, 1975, at p. 4, Vol. II of Record at 3691
 
 
 [2]
 The petitioners' Application for Rehearing of Opinion No. 728A (Rec. 3719) explicitly declines to contend that the eventual environmental consideration will be inadequate. "Rather, the thrust of the Petition for Review is that regardless of how well or truly the Commission makes any such assessment now, its rulings to this point . . . make clear that the Commission is not complying with the dictates of NEPA in the manner in which it incorporates the consideration of environmental impact into the proceeding; nor will subsequent rulings cure this error." Application for Rehearing of Opinion No. 728A filed with the FPC on December 11, 1975, Vol. II of Record at 3719
 
 
 [3]
 Opinion No. 663, 50 FPC 651 (1973), aff'd sub nom., Henry v. FPC, 168 U.S.App.D.C. 137, 513 F.2d 395 (1975)
 
 
 [4]
 The opinion, however, did take note of the fact that the Bureau of Reclamation of the Interior Department was preparing a "lead agency" environmental impact statement, and that the FPC was already working on its commentary to the draft of that statement
 
 
 [5]
 18 C.F.R. § 2.82(e) (1977)